UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERTIK MAXITROL GMBH & CO. KG,
a German Corporation; and MERTIK
MAXITROL INC., a Michigan Corporation;

        Plaintiffs,

v.

HONEYWELL TECHNOLOGIES SARL
A Swiss Corporation; HONEYWELL
INTERNATIONAL, INC., a Delaware
Corporation; HONEYWELL B.V., a
Netherlands corporation; and HONEYWELL
GmbH, a German corporation

        Defendants.

Case No.

Hon.

---

Jeffrey A. Sadowski (P28163)
Matthew B. Woodworth (P64589)
Howard and Howard Attorneys PLLC
Attorneys for Plaintiff
450 West Fourth Street
Royal Oak, MI 48067
(248) 645-1483
jas2@h2law.com

---

There are no other pending claims between these
parties arising out of the same transaction or occurrence

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES AND JURISDICTION

1.    Plaintiff, Mertik Maxitrol GmbH & Co. ("Mertik KG") is a German corporation conducting business within the United States and within the State of Michigan.

2. Plaintiff, Mertik Maxitrol Inc. ("Mertik USA") is a Michigan corporation conducting business within the United States and within the State of Michigan. Hereinafter, Mertik KG and Mertik USA will be jointly referred to as either "Plaintiffs" or "Mertik."

3. Defendant, Honeywell Technologies Sarl ("Honeywell Sarl") is a Swiss corporation, conducting business within the State of Michigan.

4. Defendant, Honeywell International, Inc. ("Honeywell USA") is a Delaware corporation, conducting business within the State of Michigan

5. Defendant, Honeywell B.V. ("Honeywell-Netherlands") is a Netherlands corporation, conducting business within the State of Michigan.

6. Defendant, Honeywell GmbH ("Honeywell Germany") is a German corporation, conducting business within the State of Michigan. Hereinafter, Honeywell Sarl, Honeywell USA, Honeywell Netherlands, and Honeywell Germany will be jointly referred to as either "Defendants" or "Honeywell."

7. This Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and supplemental and pendent jurisdiction under 28 U.S.C. § 1367, as Mertik brings claims under the federal Copyright Act, 17 U.S.C. § 101 *et seq.*

8. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 exclusive of interest, costs, and fees and by virtue of the diversity of citizenship of the parties.

9. Venue is proper under 28 U.S.C. §§1391 and 1400 as the underlying actions and transaction occurred within the State of Michigan, the acts at issue otherwise impacted business in the State of Michigan, the Defendants can be found, and in all cases except one defendant (Honeywell USA) are foreign corporations subject to the jurisdiction of this Court. Each of the

Defendants, upon information and belief, also has continuous and systematic contacts with the United States and this jurisdiction, as well as with Plaintiffs in, to or from this jurisdiction.

## FACTUAL BACKGROUND

10. Mertik and Honeywell have had a lengthy relationship with regard to the products at issue within this action.

11. From 1993 through 1994, Mertik assisted Honeywell in obtaining certification with regard to a specific gas flow control unit for gas fired heating appliances, said unit being generally identified as V5474 (the "Product").

12. In assisting Honeywell to obtain certification in Europe to sell the Product, Mertik provided Honeywell with the necessary drawings and diagrams required by the certification authority.

13. In addition to providing drawings and diagrams, Mertik provided Honeywell with various additional manners of assistance related to Honeywell obtaining certification for sale of the Product in Europe.

14. As a result of Mertik's assistance, Honeywell obtained certification from GASTEC NV in November of 1994, which certified the Product as complying with the essential requirements of the Gas Appliance Directive (90/396/EEC). **Exhibit A.**

15. Within the certification, Honeywell stated that the Product was manufactured by Honeywell B.V. in the Netherlands. *See* **Exhibit A**.

16. In 1997, Mertik and Honeywell severed their relationship with regard to the sale of the Product into Western Europe.

17. Thereafter, in 2001 and 2002, Honeywell approached Mertik and indicated that it desired to become a distributor of the Product within Russia, the Ukraine, and Romania.

18. Under Honeywell's 2001 and 2002 proposals, and the Contract executed between Mertik and Honeywell, Mertik would continue to make the Product and would provide it to Honeywell for Honeywell to distribute within Russia, the Ukraine, and Romania, and Honeywell agreed to various terms and conditions, including agreement not to reverse engineer or otherwise compete with Mertik based on any information received from Mertik under the Contract. **Exhibit B.**

19. On or about January 1, 2004, Mertik and Honeywell entered into a Supplier Agreement. **Exhibit C.**

20. Pursuant to the Supplier Agreement, Mertik would supply Honeywell with the Product (the "Product"). *See* **Exhibit C.**

21. Pursuant to the Supplier Agreement, Honeywell was granted the right to resell the Product in Russia, the Ukraine, and Romania. *See* **Exhibit C.**

22. In addition, Section (VII)(A) states that "[c]ustomer declares and warrants that it shall not use any information received from Mertik Maxitrol with respect to the Products in order to develop or manufacture goods, which compete with Mertik Maxitrol Products. Customer shall hold Mertik Maxitrol free and harmless from all costs and shall indemnify Mertik Maxitrol for all losses or loss of profit due to infringement by Customer for patents or other protective rights of Mertik Maxitrol." *See* **Exhibit C.**

23. Thereafter, on or about October 25, 2005, Mertik and Honeywell entered into an agreement titled "Corporate Guarantee for Honeywell affiliated, Subsidiary or Divisional Corporate Entities" (the "Guarantee"), in which Honeywell guaranteed payments due to Mertik from Honeywell affiliated companies. **Exhibit D.**

24. At all relevant times, the certifications obtained by Honeywell, with Mertik's assistance, stated that the Product was manufactured in Europe.

25. Recently, Mertik has learned that Honeywell has produced an unauthorized version of Product itself in China, without having been granted any permission by Mertik to do so.

26. Upon information and belief, Honeywell has represented to potential customers that the production of the Product in China was authorized and overseen by Mertik.

27. Honeywell has begun marketing an unauthorized copy of the Product, which Honeywell has designated as item number V5475 (the "Counterfeit Product"). **Exhibit E.**

28. In addition, Mertik has further learned that Honeywell is currently marketing the Counterfeit Product for sale in Eastern Europe, in addition to France, Belgium, the Netherlands, and Luxembourg.

29. Mertik has not authorized Honeywell to produce the Counterfeit Product in China.

30. In addition, Mertik has not authorized Honeywell to sell or resell the Product or Counterfeit Product in France, Belgium, the Netherlands, or Luxembourg.

31. Upon learning of Honeywell's unauthorized production and sale of the Counterfeit Product, Mertik immediately terminated its Supplier Agreement with Honeywell.

32. Honeywell continues to sell the Counterfeit Product in numerous countries.

33. In addition, Honeywell markets its products world wide via Honeywell's website. **Exhibit F.**

34. Honeywell's V5475 Counterfeit Product is nearly identical to the Product. **Exhibit G.**

35.     The only differences between the Product and Honeywell's Counterfeit Product are the top cover, which is colored gray on the Product and red on the Counterfeit Product, and minor casting distinctions that are unnoticeable to the general consumer. **Exhibit H.**

36.     The Counterfeit Product is so identical to the Product that Honeywell utilizes depictions of the Product in its advertising for its Counterfeit Product, instead of depictions of its own Counterfeit Product. **Exhibit I.**

37.     Upon information and belief, Honeywell has begun shifting its customers toward the purchase of the Counterfeit Product and away from the Product produced and provided to Honeywell by Mertik.

38.     While Honeywell's Counterfeit Products look nearly identical to the Products produced by Mertik, Honeywell's Counterfeit Products are inferior in quality to those produced by Mertik.

39.     The Product has obtained certification for sale within Europe, while the Counterfeit Product has not obtained similar certification.

40.     In addition, Mertik has learned that Honeywell has falsely represented to third parties and potential customers that it has purchased Mertik or divisions of Mertik.

41.     Such representations falsely indicate to customers and potential customers that an association exists between Honeywell, Mertik, and their respective products when no such association is exists.

42.     Given the nature of the Product and Counterfeit Product, which both serve as controls for space heaters, end consumers often do not examine the source of the controls for their space heaters unless a fire has occurred.

43. This creates significant actual and potential post-sale confusion as to the source of the controls for end user's space heaters, as they are generally examined after they have been burned in a fire and a determination as to the source, Mertik or Honeywell, cannot be determined.

## COUNT I – COPYRIGHT INFRINGEMENT ('816 COPYRIGHT)

44. Mertik restates its allegations contained within paragraph numbers 1 through 43 as if more fully set forth herein.

45. Mertik KG has a proper federal registration for the copyrighted key portions of the Product (Registration No. VAu 1-022-816 (the "'816 Copyright")) and has exclusive ownership and exclusive rights to use its copyright. **Exhibit J.**

46. Honeywell, through its prior contractual relationship with Mertik had complete access to Mertik KG's copyrighted work.

47. Strong similarities probative of copying exist between Mertik KG's copyrighted work and Honeywell's marketing materials and Counterfeit Product.

48. The Counterfeit Product and marketing material utilized by Honeywell is substantially similar such that Mertik KG's copyright to the original has been infringed. **Exhibit K.**

49. Honeywell's infringement is not protected through any exceptions under the Copyright Act.

50. Pursuant to 17 U.S.C. §502, Mertik KG is entitled to initial and final injunctive relief to cease Honeywell's infringement of the '816 Copyright.

51. In addition, pursuant to 17 U.S.C. §503, Mertik KG is entitled to an order impounding and destroying all of the Counterfeit Products as well as all additional items that infringe upon the '816 Copyright.

52. Mertik KG is entitled to its actual damages and any profits of Honeywell related to the Counterfeit Product pursuant to 17 U.S.C. §504(a).

53. Pursuant to 17 U.S.C. §504, a copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.

54. Pursuant to 17 U.S.C. §505 Mertik KG is entitled to all costs and attorneys fees incurred in this action.

## COUNT II COPYRIGHT INFRINGEMENT ('817 COPYRIGHT)

55. Mertik restates its allegations contained within paragraph numbers 1 through 54 as if more fully set forth herein.

56. Mertik KG has a proper federal registration for the copyrighted key portions of the Product (Registration No. VAu-1-022-817 (the "'817 Copyright")) and has exclusive ownership and exclusive rights to use its copyright. **Exhibit L.**

57. Honeywell, through its prior contractual relationship with Mertik had complete access to Mertik KG's copyrighted work.

58. Strong similarities probative of copying exist between Mertik KG's copyrighted work and Honeywell's marketing materials and Counterfeit Product.

59. The Counterfeit Product and marketing material utilized by Honeywell is substantially similar such that Mertik KG's copyright to the original has been infringed. **Exhibit M.**

60. Honeywell's infringement is not protected through any exceptions under the Copyright Act.

61. Pursuant to 17 U.S.C. §502, Mertik KG is entitled to initial and final injunctive relief to cease Honeywell's infringement of the '817 copyright.

62. In addition, pursuant to 17 U.S.C. §503, Mertik KG is entitled to an order impounding and destroying all of the Counterfeit Products as well as all additional items that infringe upon the '817 Copyright.

63. Mertik KG is entitled to its actual damages and any profits of Honeywell related to the Counterfeit Product pursuant to 17 U.S.C. §504(a).

64. Pursuant to 17 U.S.C. §504, a copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.

65. Pursuant to 17 U.S.C. §505 Mertik KG is entitled to all costs and attorneys fees incurred in this action.

## COUNT III - UNFAIR COMPETITION

66. Mertik restates its allegations contained within paragraph numbers 1 through 65 as if more fully set forth herein.

67. Honeywell has unfairly competed with Mertik in willful and conscious disregard of the rights of Mertik and the consuming public.

68. Honeywell has engaged and is engaging in acts of unfair competition with Mertik including, at a minimum, selling the Counterfeit Product, which reproduces or colorably imitates the Product, in connection with the sale, offering for sale, distribution or advertising of Honeywell's Counterfeit Product.

69. Honeywell's sale of the Counterfeit Products has caused confusion and is likely to further confuse, mislead or deceive consumers, purchasers and members of the general public as to the origin, source, sponsorship, or affiliation of the Counterfeit Products, and is likely to cause such people to believe in error that Honeywell's Counterfeit Products have been authorized, sponsored, approved, endorsed, or licensed by Mertik or that Honeywell is in some way affiliated with Plaintiff. These actions are in violation of 15 U.S.C. § 1125(a).

70. Defendant's acts of unfair competition have continued willfully and knowingly.

71. Upon information and belief, Honeywell's unauthorized sale in commerce of the Counterfeit Product has enabled Honeywell to earn substantial profits, as to which it is not in equity or good conscience entitled, and has unjustly enriched Honeywell at Mertik's expense, all to Honeywell's profit and to Mertik's damage.

72. Mertik has no adequate remedy at law and will continue to be irreparably injured unless and until Honeywell's conduct is permanently enjoined by this Court.

73. As a direct and proximate result of Honeywell's activities, Mertik has sustained losses and hereby asserts claims against Honeywell for injunctive and monetary relief, including but not limited to increased damages and profits, exemplary and punitive damages, and costs and attorneys' fees, in an amount to be determined at trial.

## COUNT IV - UNFAIR COMPETITION (WEBSITE MARKETING)

74. Mertik restates its allegations contained within paragraph numbers 1 through 73 as if more fully set forth herein.

75. Honeywell has unfairly competed with Mertik in willful and conscious disregard of the rights of Mertik and the consuming public.

76. Honeywell has engaged and is engaging in acts of unfair competition with Mertik including, at least, marketing and selling the Counterfeit Product, which reproduces or colorably imitates the Product, in connection with the sale, offering for sale, distribution or advertising of Honeywell's Counterfeit Product on Honeywell's website.

77. Honeywell's sale of the Counterfeit Products and use of confusingly similar internet marketing has caused confusion and is likely to continue to confuse, mislead or deceive consumers, purchasers and members of the general public as to the origin, source, sponsorship, or affiliation of the Counterfeit Products, and is likely to cause such people to believe in error that Honeywell's Counterfeit Products have been authorized, sponsored, approved, endorsed, or licensed by Mertik or that Honeywell is in some way affiliated with Plaintiff. These actions are in violation of 15 U.S.C. § 1125(a).

78. Defendant's acts of unfair competition have continued willfully and knowingly.

79. Upon information and belief, Honeywell's unauthorized sale in commerce of the Counterfeit Product and use of misleading and confusing internet marketing has enabled Honeywell to earn substantial profits, as to which it is not in equity or good conscience entitled, and has unjustly enriched Honeywell at Mertik's expense, all to Honeywell's profit and to Mertik's damage.

80. Mertik has no adequate remedy at law and will continue to be irreparably injured unless and until Honeywell's conduct is permanently enjoined by this Court.

81. As a direct and proximate result of Honeywell's activities, Mertik has sustained losses and hereby asserts claims against Honeywell for injunctive and monetary relief, including but not limited to increased damages and profits, exemplary and punitive damages, and costs and attorneys' fees, in an amount to be determined at trial.

## COUNT V – TRADE DRESS INFRINGEMENT

82. Mertik restates its allegations contained within paragraph numbers 1 through 81 as if more fully set forth herein.

83. Mertik KG has sold the Product since the early 1990's.

84. Since the Product entered the market, Mertik KG has spent significant funds marketing the Product and establishing the Product to its potential customer base.

85. As a result of its sales since the early 1990's, Mertik KG has obtained trade dress rights with regard to the appearance of the Product.

86. Mertik KG's protected trade dress includes the general design of the Product which contains a base containing inlet and outlet connections from the front side and bottom of the unit's base and an incorporated pilot filter and adjusting screw for the pilot burner gas supply. In addition, the Product's trade dress includes mounting holes at the bottom and side to allow for attachment to gas appliances. The top cover of the Product is generally rectangular in shape with two exposed knobs, one for manual pilot and on/off operation and a temperature knob with integrated thermostat providing snap action and modulation control from maximum to minimum gas flow. Beneath the top cover is a metal slab containing an indented slot utilized in the fastening of the top cover to the Product's main body. **Exhibit N.**

87. Mertik KG's trade dress is distinctive in the market place and identifies Mertik as the source of the Product to those within the relevant market.

88. As a result of Mertik KG's sale and advertising of the Product since the early 1990's, Mertik's trade dress has acquired secondary meaning within the marketplace.

89. Mertik KG's trade dress is non-functional.

90. Honeywell's Counterfeit Product is nearly identical in appearance to the Product.

91. As such, Honeywell's Counterfeit Product is confusingly similar to Mertik KG's protected trade dress and has caused confusion within the marketplace as to the origin and quality of Honeywell's Counterfeit Product in which customers believe the Counterfeit Product is associated with and built to Mertik KG's quality standards when they are not.

92. Honeywell's actions have continued willfully and knowingly.

93. Upon information and belief, Honeywell's unauthorized use in commerce of Mertik KG's trade dress has enabled Honeywell to earn substantial profits, as to which it is not in equity or good conscience entitled, and has unjustly enriched Honeywell at Mertik KG's expense.

94. Honeywell's aforesaid conduct has caused and will continue to cause irreparable injury to Mertik KG to the goodwill associated with Mertik KG's trade dress.

95. Mertik KG has no adequate remedy at law and will continue to be irreparably injured unless and until Honeywell's conduct is permanently enjoined by this Court.

96. Honeywell's actions constitute trade dress infringement pursuant to 15 U.S.C. §1125(a).

## COUNT VI – BREACH OF CONTRACT

97. Mertik restates its allegations contained within paragraph numbers 1 through 96 as if more fully set forth herein.

98. Both the Contract **Exhibit B** and the Supplier Agreement **Exhibit C** incorporated Mertik's General Terms and Conditions.

99. Section (VII)(A) of the terms and conditions provides that "[a]ll patents trademarks, copyrights and other industrial property rights existing with respect to the Products and all information and documents pertaining to development, production and sale of the Products shall remain the exclusive property of Mertik [KG]". *See* **Exhibits B and C.**

100. In addition, Section (VII)(A) states that "[c]ustomer declares and warrants that it shall not use any information received from Mertik [KG] with respect to the Products in order to develop or manufacture goods, which compete with Mertik [KG] Products. Customer shall hold Mertik [KG] free and harmless from all costs and shall indemnify Mertik [KG] for all losses or loss of profit due to infringement by Customer for patents or other protective rights of Mertik [KG]." *See* **Exhibits B and C.**

101. Honeywell has breached the terms of the Contract and the Supply Agreement by utilizing the products and information received from Mertik to develop and produce the Counterfeit Product sold by Honeywell, which directly compete with the Product sold by Mertik.

102. As a result of Honeywell's actions, Mertik has suffered damages.

### COUNT VII – COMMON LAW UNFAIR COMPETITION

103. Mertik restates its allegations contained within paragraph numbers 1 through 102 as if more fully set forth herein.

104. Honeywell's adoption and use of Mertik KG's trade dress and Honeywell's sale of the Counterfeit Product constitutes common law unfair competition and misappropriation of Mertik KG's goodwill.

105. Honeywell's actions, conduct and practices described above have at all times been willful and/or knowing.

106. As a direct and proximate result of Honeywell's activities, Mertik KG has sustained losses and hereby asserts claims against Honeywell for injunctive and monetary relief, including but not limited to increased damages and profits, exemplary and punitive damages, and costs and attorneys' fees, in an amount to be determined at trial.

### COUNT VIII – UNJUST ENRICHMENT

107. Mertik restates its allegations contained within paragraph numbers 1 through 106 as if more fully set forth herein.

108. Honeywell, through its above-described conduct, has been and continues to be unjustly enriched to the damage and irreparable harm of Mertik.

109. Honeywell's unauthorized use in commerce of Mertik KG's protected trade dress and Honeywell's sale of the Counterfeit Product has enabled Honeywell to earn substantial profits to which it is not in equity or good conscience entitled and has unjustly enriched Honeywell at Mertik KG's expense, all to Honeywell's profit and to Mertik KG's damage and harm.

110. Mertik is entitled to compensation for Honeywell's unjust enrichment.

### COUNT IX – VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT

111. Mertik restates its allegations contained within paragraph numbers 1 through 110 as if more fully set forth herein.

112. By virtue of the acts enumerated in this Complaint, Honeywell has engaged in unfair, unconscionable, and deceptive methods, acts or practices in the conduct of trade or commerce within this state, including but not limited to:

a. Causing a probability of confusion or misunderstanding as to the source or sponsorship of Honeywell's Counterfeit Product.

b. Causing actual confusion and misunderstanding as to the source or sponsorship of Honeywell's Counterfeit Product.

c. Using deceptive dress, marks, representations or designations in connection with its products.

d. Using deceptive dress, marks, representations or designations stating, implying, or suggesting that Honeywell's business or Counterfeit Products have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have or that persons have sponsorship, approval, status, affiliation, or connection with Mertik and/or Mertik's Product which they do not have.

e. Failing to reveal one or more material facts, the omission of which tends to mislead or deceive the consumer.

113. By virtue of the acts enumerated in this Complaint, Honeywell has violated the Michigan Consumer Protection Act, MCL §445.901 et seq.

114. Mertik has no adequate remedy at law for such injury and Honeywell's wrongful acts will continue unless restrained and enjoined by this Court, as provided by MCL §445.911.

115. By reason of the foregoing, Mertik has suffered damages and is entitled to monetary and equitable remedies, with said award to be multiplied in accordance with the provision of the Michigan Consumer Protection Act.

## COUNT X – INJUNCTIVE RELIEF

116. Mertik restates its allegations contained within paragraph numbers 1 through 115 as if more fully set forth herein.

117. Mertik KG is the lawful owner of its trade dress related to the Product and its Registered Copyrights VAu 1-022-816 and VAu 1-022-817.

118. Without an injunction, Mertik reasonably believes that Honeywell will continue to use and infringe upon Mertik KG's trade dress and to sell inferior and unauthorized products that the consuming public will wrongly believe is associated with Mertik.

119. In addition, without an injunction, Mertik reasonably believes that Honeywell will continue to use and infringe upon Mertik KG's registered copyrights.

120. Mertik will suffer irreparable harm if Honeywell is not enjoined from manufacturing and selling its Counterfeit Products.

121. There is a substantial likelihood of success that Mertik will prevail on the merits of its claims against Honeywell.

122. The balancing of harm to Mertik if an injunction does not issue, versus the harm to Honeywell should an injunction issue, and clearly weighs in favor of granting the injunction. The harm to Mertik will be substantial and irreparable. Conversely, there is no harm to Honeywell if an injunction issues as the injunctive relief sought merely prohibits Honeywell from: using the Mertik trade dress for its own use and otherwise unfairly competing with Mertik with respect to the Product.

123. The public interest in the rightful use and enjoyment of one's own property, and in the preservation of the status quo pending a final determination in this matter, will be served, and not harmed, by issuing injunctive relief in this matter.

WHEREFORE, Mertik requests the Court grant Mertik the following relief on an expedited basis:

A. Preliminary injunctive relief immediately enjoining Defendant Honeywell from the production, sale, and marketing of the Counterfeit Product pursuant to 17 U.S.C. §502 and; 15 U.S.C. §1116.

B. That Judgment be entered holding Defendant Honeywell liable for copyright infringement pursuant to 17 U.S.C. §501

C. That Judgment be entered in favor of Plaintiff Mertik KG in all respects, and that pursuant to 17 U.S.C. § 502, an injunction be issued restraining Defendant Honeywell from producing, selling, offering for sale, or marketing the Counterfeit Product as well as restraining Honeywell from offering for sale, selling, reproducing, preparing derivative works, distributing, servicing or otherwise using the items protected by Copyright registration numbers VAu 1-022-816 and VAu 1-022-817 or any similar work;

D. That said Judgment includes, pursuant to 17 U.S.C. § 503, that all Counterfeit Products and any further items infringing upon copyrights VAu 1-022-816 or VAu 1-022-817 be impounded by Mertik KG and destroyed;

E. That Defendant Honeywell shall recompense Mertik KG in the amount of at least US$300,000.00 statutory damages or Mertik KG's actual damages pursuant to 17 U.S.C. § 504, whichever is higher;

F. That Judgment be entered holding Defendant Honeywell liable for trade dress infringement under 15 U.S.C. §1125;

G. That Honeywell's infringement of Mertik KG's trade dress be deemed exceptional and Mertik be awarded its reasonable attorneys' fees under 15 U.S.C. §1117(a)(3);

H. That pursuant to 17 U.S.C. § 505, Defendant Honeywell shall recompense Mertik for all costs and attorneys fees incurred in this action.

> Respectfully submitted,
>
> HOWARD & HOWARD ATTORNEYS PLLC
>
> By:  /s/ Jeffrey A. Sadowski
>   Jeffrey A. Sadowski (P28163)
>   Matthew B. Woodworth (P64589)
> Attorneys for Plaintiff
> 450 West Fourth Street
> Royal Oak, MI  48067
> (248) 645-1483
> jas2@h2law.com

Dated:  June 8, 2010

## JURY DEMAND

Plaintiff requests a jury for all issues triable by jury in this action.

> Respectfully submitted,
>
> HOWARD & HOWARD ATTORNEYS PLLC
>
> By:  /s/ Jeffrey A. Sadowski
>   Jeffrey A. Sadowski (P28163)
>   Matthew B. Woodworth (P64589)
> Attorneys for Plaintiff
> 450 West Fourth Street
> Royal Oak, MI  48067
> (248) 645-1483
> jas2@h2law.com

Dated:  June 8, 2010