UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERTIK MAXITROL GMBH & CO. KG,
a German corporation, and MERTIK
MAXITROL INC., a Michigan corporation,

    Plaintiffs,                                  Case No. 10-12257

v.                                             Honorable Patrick J. Duggan

HONEYWELL TECHNOLOGIES SARL, a
Swiss corporation, HONEYWELL
INTERNATIONAL, INC., a Delaware
corporation, and HONEYWELL B.V., a
Netherlands corporation,

    Defendants.
_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on March 6, 2012.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                         U.S. DISTRICT COURT JUDGE

On June 8, 2010, Mertik Maxitrol GMBH & Co. KG ("Mertik KG"), a German corporation, and Mertik Maxitrol, Inc. ("Mertik Inc."), a Michigan corporation affiliated with Mertik KG, filed this suit to recover damages for the unauthorized use of copyrights and trade dress in connection with the sale of gas flow control devices. Before the Court is Defendant Honeywell B.V.'s motion to dismiss for lack of personal jurisdiction, filed pursuant to Federal Rule of Civil Procedure 12(b)(2). The matter has been fully briefed, and on February 29, 2012, the Court indicated to the parties that it was dispensing with

oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons stated below, the Court grants Honeywell B.V.'s motion.

## I. Factual and Procedural Background

Plaintiffs manufacture a gas flow control unit that is used in certain types of heating appliances. One or more Mertik entities appointed one or more Honeywell entities to distribute this product in Western Europe.[1] Plaintiffs assert that these Honeywell entities were provided with drawings and diagrams in order to obtain certifications required to sell the product in Europe. TAC ¶ 33.[2] This distribution relationship ended in 1997. *Id.* ¶ 37.

In 2001 or 2002, Honeywell's affiliate in the Ukraine and Russia proposed to distribute the product. Mertik KG entered into an contract with Honeywell's Netherlands affiliate, Honeywell B.V., under which Mertik KG would deliver the product to Honeywell Ukraine and Russia for distribution in those two nations, and Honeywell B.V. would guarantee payment. *See* Pls.' Resp. Br. Ex. D. The parties renewed their agreement in 2003 and 2004.[3] Pls.' Resp. Br. Exs. E, F. The agreement apparently provided that the Honeywell entities would not reverse engineer or compete with the product. The Honeywell entities designated this product "V5475" in their sales materials, while Mertik sold the product with the designation "GV30."

---

[1] It is not clear from the pleadings or briefs which Mertik entity or entities and which Honeywell entities were parties to the original distribution agreement.

[2] Defendants' motions address Plaintiff's Third Amended Complaint ("TAC"), filed on September 7, 2011.

[3] The 2003 and 2004 agreements granted Honeywell Ukraine and Russia the additional right to distribute the product in Romania.

In 2010, Plaintiffs apparently learned that a Honeywell entity was producing an unauthorized version of the product in China. TAC ¶ 46; Kern-Koskela Decl. ¶ 17.[4] Plaintiffs assert that Honeywell B.V. markets this product for sale in Eastern Europe, France, Belgium, the Netherlands, and Luxembourg under the same "V5475" designation. TAC ¶ 58; Kern-Koskela Decl. ¶¶ 17, 19. Plaintiffs assert that one or more Honeywell entities market this product worldwide via the internet. TAC ¶ 64. The unauthorized version of the product is allegedly distinguishable only by color variations and minor casting distinctions. TAC ¶ 67.

In June 2010, Plaintiffs filed this action in the Eastern District of Michigan. They subsequently amended their Complaint twice. Honeywell USA moved to dismiss the Second Amended Complaint, and the Court granted this motion in part. Plaintiffs moved for reconsideration and leave to file a Third Amended Complaint, pointing to new facts supporting their claims. The Court granted leave to amend, and Plaintiffs filed their Third Amended Complaint on September 7, 2011. Honeywell B.V. now argues that the Court lacks personal jurisdiction over Honeywell B.V.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) governs a motion to dismiss for lack of personal jurisdiction. "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.

---

[4] It is unclear which Honeywell entity is alleged to have produced the product.

2002)). Unless the district court conducts an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction. *Id.* This burden is satisfied by "'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Neogen*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). The Court "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in the light most favorable to the nonmoving party." *Id.* (citations omitted).

### III. Discussion

In cases where a federal court's jurisdiction stems from the existence of a federal question, "personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process.'" *Bird*, 289 F.3d at 871 (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). The Court shall address each of these requirements in turn. It should be first noted, however, that Plaintiffs have not disputed Honeywell B.V.'s argument that the facts here would not support the exercise of general personal jurisdiction. Therefore, the Court shall only address the parties' arguments concerning specific personal jurisdiction.

### A. Michigan's Long-Arm Statute

Michigan courts may exercise limited personal jurisdiction over a corporation in a suit "arising out of the act or acts which create . . . (1) [t]he transaction of any business within the state," or "(2) [t]he doing or causing any act to be done, or consequences to

occur, in the state resulting in an action for tort." Michigan Compiled Laws § 600.715.[5] The "arising out of" requirement means that the lawsuit was "made possible" by the defendant's contacts with the state, or that it "lies in the wake" of those contacts. *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988).

Plaintiffs assert that Honeywell B.V. negotiated the 2002, 2003, and 2004 distribution agreements with individuals who worked primarily at Mertik Inc.'s offices in Michigan. Plaintiffs also assert that the agreements were "negotiated within" Michigan.[6] Pls.' Br. 4. If that were true, it would satisfy the requirement of the "transaction of any business within the state." *See Lanier*, 843 F.2d at 906-08 (exchange of correspondence and telephone calls with individual located in Michigan is transaction of business within the meaning of § 600.715(1), because "even the slightest act of business in Michigan" is sufficient). Plaintiffs argue that as a part of the distribution relationship created through these negotiations, Mertik provided information that was eventually used to create the unauthorized V5475 product. Thus, Plaintiffs argue, the action to enjoin unauthorized production was "made possible" only through Honeywell B.V.'s contacts with Michigan. Generously interpreting the meaning of the phrase "made possible," the Court concludes that Honeywell B.V.'s alleged contacts with the State of Michigan set in motion the events

---

[5] The long-arm statute defines a number of other transactions that would also give rise to limited personal jurisdiction, but they are not relevant to the facts of this case.

[6] Although Honeywell B.V. argues that this assertion is not supported by the declarations before this Court, for purposes of this motion, the Court draws inferences favorable to Plaintiffs. Given that some individuals were based in Michigan, it is feasible that Honeywell B.V. may have had some contact with those individuals while they were in Michigan.

culminating in this action.⁷ Michigan's long-arm statute therefore permits the exercise of specific personal jurisdiction over Honeywell B.V. in this case.

**B. Due Process Analysis**

Of course, even if the Michigan long-arm statute authorizes the exercise of personal jurisdiction over a defendant, a Michigan court may not do so in violation of the right to due process. *Neogen*, 282 F.3d at 889. To make the required showing with respect to due process, the plaintiff must "establish with reasonable particularity sufficient 'minimum contacts' with Michigan so that the exercise of jurisdiction over [the defendant] would not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). In determining whether the minimum contacts requirement is satisfied, the Sixth Circuit applies a three-part test:

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*Id.* at 890 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

The Court first considers the matter of purposeful availment. Honeywell B.V. is not incorporated in the State of Michigan and does not have offices or employees located here. Honeywell B.V. has not registered to do business in Michigan and has no presence in the

---

⁷ *Lanier* seems to adopt this generous interpretation of the statutory language, applying a "but for" test to the relationship between the action and the defendant's contacts with the forum state. 843 F.2d at 909.

state.  Plaintiffs do not dispute this; rather, they point to other facts that they contend establish purposeful availment of the forum.

Plaintiffs argue that Honeywell B.V.'s negotiation of distribution agreements with persons located in Michigan satisfies the "purposeful availment" requirement.  The Court disagrees.  Honeywell B.V. entered into these agreements with Mertik KG, a German corporation, rather than Mertik Inc.  *See* Pls.' Br. Exs. D, E, F.  There is no indication that it was Honeywell B.V.'s decision to involve persons working in Michigan in these discussions.  Although such a scenario is not necessarily uncommon, the facts do not show that Honeywell B.V. purposefully acted in Michigan by entering into these negotiations.

Plaintiffs also point to Honeywell's internet site as indicating purposeful availment. Plaintiffs assert that Honeywell advertised the V5474 product on the internet, and that the site could be viewed by persons in Michigan.  Kern-Koskela Decl. ¶ 21.  Standing alone, this allegation cannot establish purposeful availment.  "The level of contact with a state that occurs simply from the fact of a website's availability on the Internet is . . . an 'attenuated' contact that falls short of purposeful availment."  *Neogen*, 282 F.3d at 890. "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state."[8]  *Id.*  The website pages attached to the Third Amended Complaint

---

[8] *Neogen* applied the so-called "sliding scale" test set forth in greater detail in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.  This sliding scale is consistent with well

by Plaintiffs are not the sort that could be expected to result in interaction with Michigan residents. In fact, the site does not appear to be targeted toward Michigan residents at all. The pages are designated "Honeywell Environmental & Combustion Controls EMEA." The acronym "EMEA" is a common abbreviation for "Europe, Middle East, and Africa." Moreover, the pages only seem to display product information and contact information for Honeywell affiliates in those regions. There is no indication that any particular product on the site, much less the V5475, is available in the United States. Nor is there any indication that the site allow customers to purchase products. This is a classic example of the type of passive internet site that fails to establish personal jurisdiction. Plaintiffs speculate that the product could have been purchased by a customer in Michigan, *see* Kern-Koskela Decl. ¶ 23, but the pages attached to the Third Amended Complaint gives rise to no such inference. Personal jurisdiction cannot be supported by speculation, particularly where the website at issue was plainly not targeted toward Michigan customers. While the pages

---

    developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (citations omitted).

cited by Plaintiffs may have been *accessible* to Michigan residents, they demonstrate no *intent to interact* with Michigan residents.

Plaintiffs argue that they have established purposeful availment under the "effects test," as Honeywell B.V.'s conduct led Plaintiffs to suffer damages. The Sixth Circuit has "narrowed" the application of this test, holding that "the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007). Rather, intentional tortious conduct enhances a party's other contacts with the forum state for purposes of the analysis. *Id.* at 553. As discussed above, Honeywell B.V. has had few, if any, contacts with Michigan. The alleged contacts are of an extremely attenuated quality, and the Court concludes that the claimed effects of the Honeywell B.V.'s conduct are insufficient to establish personal jurisdiction.

Plaintiffs state that arguments "nearly identical" to Honeywell B.V.'s have been rejected under "similar circumstances" in *Weather Underground, Inc. v. Navigation Catalyst Systems, Inc.*, No. 09-10756, 2011 WL 2414415 (E.D. Mich. Jun. 10, 2011). That decision involved a business registering internet domain names similar to those used by other websites, in the hope of capturing traffic from users who mistakenly type website addresses. The defendant asserted that its website was passive, yet its business model was to profit from internet traffic generated because of similarities to the plaintiff's trade and service marks. The facts of this case are completely different, and the Court concludes that Plaintiffs' reliance on *Weather Underground* is misplaced.

Plaintiffs cite *Nuance Communications, Inc. v. Abbyy Software House*, 2011 U.S.

9

Dist. LEXIS 50317 (N.D. Cal. May 3, 2011), for the proposition that an "overlap in management" between a foreign defendant and a defendant based in the United States is sufficient to establish personal jurisdiction. This reliance is misplaced. The overlapping management of the defendants was only one factor considered by the court, and a variety of other contacts supported the exercise of personal jurisdiction. *Id.* at *13. Here, such contacts are lacking.

Having concluded that Honeywell B.V. has not purposefully availed itself of the laws and protections of the State of Michigan, the Court finds it unnecessary to consider the remaining two factors of the minimum contacts analysis. As Plaintiffs have failed to establish sufficient minimum contacts so that the exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, 66 S. Ct. at 158, the Court concludes that the exercise of personal jurisdiction over Honeywell B.V. would not comport with due process. Plaintiffs have failed to make a prima facie showing of jurisdiction, and thus, Honeywell B.V.'s motion to dismiss for lack of personal jurisdiction should be granted.

Accordingly,

**IT IS ORDERED** that Honeywell B.V.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Matthew B. Woodworth, Esq.

10

Jeffrey A. Sadowski, Esq.
Michael A. Lindsay, Esq.
Heather M. McCann, Esq.