UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MERTIK MAXITROL GMBH & CO. KG,
a German corporation, and MERTIK
MAXITROL INC., a Michigan corporation,

    Plaintiffs,                              Case No. 10-12257

v.                                            Honorable Patrick J. Duggan

HONEYWELL TECHNOLOGIES SARL, a
Swiss corporation, HONEYWELL
INTERNATIONAL, INC., a Delaware
corporation, and HONEYWELL B.V., a
Netherlands corporation,

    Defendants.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on March 6, 2012.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

On June 8, 2010, Mertik Maxitrol GMBH & Co. KG ("Mertik KG"), a German corporation, and Mertik Maxitrol, Inc. ("Mertik Inc."), a Michigan corporation affiliated with Mertik KG, filed this suit to recover damages for the unauthorized use of copyrights and trade dress in connection with the sale of gas flow control devices. Before the Court is a motion to dismiss filed by Defendant Honeywell Technologies SARL ("Honeywell SARL") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). Defendant Honeywell International, Inc. ("Honeywell USA") has also joined in this motion in part.

The matter has been fully briefed, and on February 29, 2012, the Court indicated to the parties that it was dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons stated below, the Court grants the motion in part.

## I. Factual and Procedural Background

Plaintiffs manufacture a gas flow control unit that is used in certain types of heating appliances. One or more Mertik entities appointed one or more Honeywell entities to distribute this product in Western Europe.[1] Plaintiffs assert that these Honeywell entities were provided with drawings and diagrams in order to obtain certifications required to sell the product in Europe. TAC ¶ 33.[2] This distribution relationship ended in 1997. *Id.* ¶ 37.

In 2001 or 2002, Honeywell's affiliate in the Ukraine and Russia proposed to distribute the product. Mertik KG entered into an contract with Honeywell's Netherlands affiliate, Honeywell B.V., under which Mertik KG would deliver the product to Honeywell Ukraine and Russia for distribution in those two nations, and Honeywell B.V. would guarantee payment. *See* Pls.' Resp. Br. Ex. D. The parties renewed their agreement in 2003 and 2004.[3] Pls.' Resp. Br. Exs. E, F. The agreement apparently provided that the Honeywell entities would not reverse engineer or compete with the product. The Honeywell entities designated this product "V5475" in their sales materials, while Mertik

---

[1] It is not clear from the pleadings or briefs which Mertik entity or entities and which Honeywell entities were parties to the original distribution agreement.

[2] Defendants' motions address Plaintiff's Third Amended Complaint ("TAC"), filed on September 7, 2011.

[3] The 2003 and 2004 agreements granted Honeywell Ukraine and Russia the additional right to distribute the product in Romania.

sold the product with the designation "GV30."

In 2010, Plaintiffs apparently learned that a Honeywell entity was producing an unauthorized version of the product in China. TAC ¶ 46; Kern-Koskela Decl. ¶ 17.[4] Plaintiffs assert that Honeywell B.V. markets this product for sale in Eastern Europe, France, Belgium, the Netherlands, and Luxembourg under the same "V5475" designation. TAC ¶ 58; Kern-Koskela Decl. ¶¶ 17, 19. Plaintiffs assert that one or more Honeywell entities market this product worldwide via the internet. TAC ¶ 64. The unauthorized version of the product is allegedly distinguishable only by color variations and minor casting distinctions. TAC ¶ 67.

In June 2010, Plaintiffs filed this action in the Eastern District of Michigan. They subsequently amended their Complaint twice. Honeywell USA moved to dismiss the Second Amended Complaint, and the Court granted this motion in part. Plaintiffs moved for reconsideration and leave to file a Third Amended Complaint, pointing to new facts supporting their claims. The Court granted leave to amend, and Plaintiffs filed their Third Amended Complaint on September 7, 2011.

The Third Amended Complaint asserts the following claims: "Copyright Infringement" (Counts I and II); "Unfair Competition" (Count III); "Unfair Competition (Website Marketing)" (Count IV); "Trade Dress Infringement" (Count V); "Common Law Unfair Competition" (Count VII); "Unjust Enrichment" (Count VIII); and "Injunctive

---

[4] It is unclear which Honeywell entity is alleged to have produced the product.

Relief" (Count IX).[5] Honeywell SARL moved to dismiss the claims against it pursuant to Rule 12(b)(6). Honeywell USA has joined in this motion with respect to Counts III, V, VII, VIII, IX, and what it terms the "orphan" misrepresentation allegations.[6]

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must

---

[5] The Third Amended Complaint does not contain a Count VI.

[6] The "orphan" misrepresentation allegations are set forth in the Factual Background section of the Complaint, rather than in separate counts.

accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. In conducting this analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

### III. Discussion

**A. Failure to Satisfy Notice Pleading Standards**

Honeywell SARL argues that the Third Amended Complaint provides inadequate notice of the conduct for which Honeywell SARL is allegedly liable. Honeywell SARL takes issue with Plaintiffs' generic references to "Honeywell," rather than specific Honeywell entities. Plaintiffs contend that the Third Amended Complaint has defined this term to refer to all three Defendants, and thus, an allegation against "Honeywell" should be interpreted to apply to all three Defendants. *See* TAC ¶ 5. Plaintiffs' Third Amended Complaint at times refers to specific Honeywell entities, and at times uses the collective term "Honeywell." The Court believes that Plaintiff's use of the collective term gives sufficient notice that all three Honeywell entities are alleged to have engaged in the

5

identified conduct.  The heart of Plaintiffs' Third Amended Complaint appears to be the "Factual Background" section, which uses the collective term "Honeywell" as follows:

> 46. Honeywell has produced an unauthorized version of [the] Product itself in China, without having been granted any permission by Mertik to do so.
>
> 47. Honeywell has begun marketing an unauthorized copy of the Product, which Honeywell has designated as item number V5475 (the "Counterfeit Product").  Exhibit J.
>
> . . . .
>
> 58. Honeywell markets the Counterfeit Product for sale in Eastern Europe, in addition to France, Belgium, the Netherlands, and Luxembourg.
>
> 59. Upon information and belief, Honeywell has represented to potential customers that the production of the Product in China was authorized and overseen by Plaintiffs.
>
> 60. Plaintiffs have not authorized Honeywell to produce the Counterfeit Product in China.
>
> 61. In addition, Plaintiffs have not authorized Honeywell to sell or resell the Product or Counterfeit Product in France, Belgium, the Netherlands, or Luxembourg.
>
> 62. Upon learning of Honeywell's unauthorized production and sale of the Counterfeit Product, Plaintiffs immediately terminated its Supplier Agreement with Honeywell.
>
> 63. Honeywell continues to sell the Counterfeit Product in numerous countries.
>
> 64. In addition, Honeywell markets its products world wide via Honeywell's website.  Exhibit K.
>
> . . . .
>
> 68. The Counterfeit Product is so identical to the Product that Honeywell utilizes depictions of the Product in its advertising for its Counterfeit Product, instead of depictions of its own Counterfeit Product.  Exhibit N.  The decision to utilize copyrighted depictions of the Product was made by Honeywell U.S.A. within the United States.

> 69. Upon information and belief, Honeywell has begun shifting its customers toward the purchase of the Counterfeit Product and away from the Product produced and provided to Honeywell by Plaintiffs.
>
> . . . .
>
> 72. In addition, Mertik has learned that Honeywell has falsely represented to third parties and potential customers that it has purchased Plaintiffs or divisions of Plaintiffs.
>
> 73. Such representations falsely indicate to customers and potential customers that an association exists between Honeywell, Plaintiffs, and their respective products when no such association exists.

TAC ¶¶ 46-73.  The Court believes that these allegations make sufficiently clear that all three Honeywell entities are accused of producing, marketing, and selling the Counterfeit Product worldwide, as well as making false representations to third parties.  Although it may have been possible for Plaintiffs to be more specific in their allegations, Rule 8(a) requires only a short and plain statement of their claim.  That standard is satisfied here.

Honeywell SARL cites a number of cases for the principle that collective allegations fail to satisfy Rule 8's standard.  *See* Honeywell SARL Br. 5.  This rule is too broad.  Two of the cases cited by Honeywell SARL involve actions brought under 42 U.S.C. § 1983.  *See Franklin v. Federspiel*, No. 11-12483, 2011 U.S. Dist. LEXIS 80754 (E.D. Mich. July 25, 2011); *Flentall v. Mills*, 2010 U.S. Dist. LEXIS 100649 (W.D. Mich. Sep. 23, 2010).  The rationale for requiring allegations specific to each defendant in the context of a § 1983 suit has been explained by one court as follows:

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case.  In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities.  Therefore it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each

>individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (citations and internal quotations omitted). The *Robbins* court went on to explain that the allegedly tortious acts committed by these types of defendants were likely to be "entirely different in character." *Id.* The same rationale does not apply here, as Plaintiffs accuse the three Honeywell entities of nearly identical misconduct.[7] The Court can see no reason to prohibit the use of collective designations in the context of this action. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

**B. Lanham Act Unfair Competition Claim**

In their motion, Honeywell SARL and Honeywell USA argued that Count III, "Unfair Competition," must be dismissed because it is duplicative of Count V, Plaintiffs' trade dress claim brought pursuant to the Lanham Act, 15 U.S.C. § 1125(a). Plaintiffs' response clarified that Count III is a claim of false designation of origin. Honeywell SARL now contends that this claim fails because Plaintiffs have not pleaded sufficient facts to support liability under the statute.

The Lanham Act imposes liability on "any person who, on or in connection with any

---

[7] The remaining cases cited by Honeywell SARL concern complaints that were also deficient for reasons unrelated to their use of collective allegations. *See Taylor v. IBM*, 54 F. App'x 794, 2002 WL 31845220 (5th Cir. Dec. 12, 2003); *Livnat v. Lavi*, 1997 WL 563799 (S.D.N.Y. Sept. 9, 1997).

goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin . . . of his goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A). The term "origin" refers to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37, 123 S. Ct. 2041, 2050 (2003). Thus, where a defendant actually produced the goods that it sold as its own, the plaintiff cannot prevail on a false designation of origin claim.[8] *Id.* at 38, 123 S. Ct. at 2050. "In other words, taking tangible goods and reselling them as your own constitutes a Lanham Act violation; taking the intellectual property contained in those goods and incorporating it into your own goods does not." *Nat'l Bus. Dev. Servs. v. Am. Credit Educ. & Consulting, Inc.*, 299 F. App'x 509, 511 (6th Cir. Oct. 31, 2008).

Plaintiffs have not alleged that Defendants wrongfully resold as their own products produced by Plaintiffs, or that Defendants sold their own products under the claim that they were actually Plaintiffs' products. Rather, Plaintiffs claim that Defendants produced an unauthorized version of the product substantially identical to Plaintiffs' product and

---

[8] *Dastar* also discussed *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 120 S. Ct. 1339 (2000), a case in which the plaintiff manufacturer claimed that the defendant produced "knockoffs" of the plaintiff's goods, containing only minor modifications to the originals. The Supreme Court noted that such a scenario would not give rise to a false designation of origin claim, "because 'origin of goods' in the Lanham Act referred to the producer of the clothes, and not the producer of the (potentially) copyrightable or patentable designs that the clothes embodied." *Dastar*, 539 U.S. at 37, 123 S. Ct. at 2049-50.

identified that product as "V5475." TAC ¶¶ 46-47, 58, 63-64. While this conduct may be actionable under other statutes or legal theories, it does not give rise to a false designation of origin claim under the Lanham Act. Count III must therefore be dismissed with respect to Honeywell SARL and Honeywell USA.

### C. Lanham Act Website Marketing Claim

Count IV alleges that "Honeywell" violated the Lanham Act by marketing and selling products with protected trade dress through Honeywell's website. *Id.* ¶ 116. Plaintiffs further allege that Honeywell's sales of these products over the internet are likely to deceive people as to the origin of the products or the existence of an association between Honeywell and Plaintiffs. *Id.* ¶ 117. Honeywell SARL argues that Plaintiffs fail to allege any connection between Honeywell SARL and the Honeywell website. Notably, Plaintiffs have alleged that "Honeywell USA controls and supervises all information contained on the Honeywell.com website." *Id.* ¶ 18. Yet as Plaintiffs point out, they have also alleged in Count IV that:

> Honeywell has engaged and is engaging in acts of unfair competition with Plaintiffs including, at least, marketing and selling the Counterfeit Product, which reproduces or colorably imitates the Product, in connection with the sale, offering for sale, distribution or advertising of Honeywell's Counterfeit Product on Honeywell's website.

TAC ¶ 116. Because the collective "Honeywell" designation was used, the Court reads this paragraph to allege that all three Defendants, including Honeywell SARL, market and sell the counterfeit product through the Honeywell website. Thus, Plaintiffs' allegations are not confined to the maintenance of the website. Plaintiffs have alleged conduct on the part of Honeywell SARL in Count IV, and Honeywell SARL's motion to dismiss must be

10

denied with respect to this claim.

**D. Lanham Act Trade Dress Infringement Claim**

Honeywell SARL and Honeywell USA assert that Count V must be dismissed because it seeks to protect the product's functionality. It is well-established that "trade dress protection may not be claimed for product features that are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29, 121 S. Ct. 1255, 1259 (2001). A product feature is functional "'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.'" *Id.* at 32, 121 S. Ct. at 1261 (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165, 115 S. Ct. 1300, 1304 (1995)). A feature is not functional where it is "merely an ornamental, incidental, or arbitrary aspect of the device." *Id.* at 30, 121 S. Ct. at 1260. "[T]he person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3).

It is readily apparent from the facts pleaded by Plaintiffs that the trade dress they seek to protect is functional. Plaintiffs describe this trade dress to include:

> the general design of the Product which contains a base containing inlet and outlet connections from the front side and bottom of the unit's base and an incorporated pilot filter and adjusting screw for the pilot burner gas supply. In addition, the Product's trade dress includes mounting holes at the bottom and side to allow for attachment to gas appliances. The top cover of the Product is generally rectangular in shape with two exposed knobs, one for manual pilot and on/off operation and a temperature knob with integrated thermostat providing snap action and modulation control from maximum to minimum gas flow. Beneath the top cover is a metal slab containing an indented slot utilized in the fastening of the top cover to the Product's main body.

TAC ¶ 130. Each aspect of the design is stated exclusively in terms of its function. The

base is described by the components it contains and the functions of those components. The mounting holes allow "attachment to gas appliances," which is essential to the product's use because the product is built into appliances. Plaintiffs describe knobs for adjusting the temperature and turning the device on and off, as well as the operation of those knobs. Such controls are plainly essential to the product's use. The metal slab is also described purely in terms of its use in fastening the top cover onto the product. The proposed trade dress includes nothing that could be considered ornamental, incidental, or arbitrary. Plaintiffs only support for their claim that this dress is non-functional is the conclusory assertion that "Plaintiffs' protected trade dress is non-functional."[9] TAC ¶ 133. The specific facts pleaded by Plaintiffs indicate otherwise, and the Court concludes that the proposed trade dress is functional, and thus not protected under the Lanham Act. "The Lanham Act does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity." *TrafFix Devices*, 532 U.S. at 34, 121 S. Ct. at 1262.

Plaintiff argues that the issue of functionality cannot be resolved on the pleadings. While it is true that "[t]he functionality of trade dress is a factual finding," *In re Bose Corp.*, 476 F.3d 1331, 1334 (Fed. Cir. 2007), Plaintiffs have the burden of "proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). Plaintiffs are

---

[9] Plaintiffs also point to the Declaration of Bonnie Kern-Koskela, Mertik Inc.'s Chairman, which states that the features identified as Mertik's trade dress are non-functional. Kern-Koskela Decl. ¶ 6. The Court notes that this document was not attached to the pleadings, and is therefore not properly considered on a Rule 12(b)(6) motion. *See Greenberg*, 177 F.3d at 514. Even if the Complaint were amended to include this document, however, it makes the same conclusory assertions as the Third Amended Complaint.

therefore required to at least plead facts that would permit a finding of non-functionality. Here, Plaintiffs have failed to do so, as the trade dress they seek to protect is plainly functional. Finally, Plaintiffs have asserted that their trade dress has acquired secondary meaning in the marketplace as an identifier of the manufacturer, TAC ¶ 132, but where trade dress is found to be functional, "secondary meaning is irrelevant." *TrafFix Devices*, 532 U.S. at 26, 121 S. Ct. at 1258. Count V must therefore be dismissed with respect to Honeywell SARL and Honeywell USA.

### E. The "Orphan" Misrepresentation Allegations

Honeywell SARL and Honeywell USA argue that the "orphan" misrepresentation allegations should be stricken from the Third Amended Complaint. These allegations are:

> 59. Upon information and belief, Honeywell has represented to potential customers that the production of the Product in China was authorized and overseen by Plaintiffs.
>
> . . . .
>
> 72. In addition, Mertik has learned that Honeywell has falsely represented to third parties and potential customers that it has purchased Plaintiffs or divisions of Plaintiffs.
>
> 73. Such representations falsely indicate to customers and potential customers that an association exists between Honeywell, Plaintiffs, and their respective products when no such association [] exists.

TAC ¶¶ 59, 72-73. Honeywell SARL and Honeywell USA argue that these statements fail to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which they contend applies even under the Lanham Act if a misrepresentations is alleged. The parties concede that there is no controlling authority defining the appropriate standard.

Plaintiffs admit that they have not asserted a claim of fraud, Pls.' Resp. Br. 12, but

13

seem to indicate that these allegations support their Lanham Act claims. The Court has concluded that Counts III and V must be dismissed. The only remaining Lanham Act claim is Count IV, which concerns the marketing and sale of counterfeit products through Honeywell's website. The misrepresentation allegations are unrelated to this claim, as they involve statements by Honeywell to third parties. Thus, the "orphan" allegations are irrelevant to the Lanham Act claim remaining before the Court. The Court therefore need not address the pleading standard applicable to misrepresentation allegations supporting a Lanham Act claim. Because Plaintiffs have not asserted a fraud claim, the Court finds the allegations in paragraphs 59, 72, and 73 are irrelevant, and should be stricken pursuant to Federal Rule of Civil Procedure 12(f).

**F. Common Law Claims**

Honeywell SARL and Honeywell USA argue that the common law claims in Counts VII and VIII must be dismissed because the common law does not reach conduct outside the United States. Michigan law typically does not apply to conduct that occurs outside both Michigan and the United States:

> The general rule of law is that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction. This extraterritoriality rule has a long history in international and common law. However, as populations and technology progressed and travel between countries and among the states increased to an everyday occurrence, exceptions to the general rule of extraterritoriality were created so that it is now recognized that a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries.

*Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406, 434, 320 N.W.2d 843, 854 (Mich. 1982). Plaintiffs seem to argue that an exception to the rule of extraterritoriality should

14

apply here, but *Sexton* only recognized exceptions created by the legislature. Michigan common law, of course, is judicially created. *Pittman v. Taylor*, 398 Mich. 41, 49 n.8, 247 N.W.2d 512, 515 n.8 (Mich. 1976). *Sexton* appears to preclude extraterritorial application of Michigan common law.

Plaintiffs argue that a Michigan common law unfair competition claim is governed by the same standards as the Lanham Act. They note that the Lanham Act does apply outside the United States in some instances. The Court does not believe, however, that reliance on standards of federal law allows Michigan courts to effectively exercise the powers of Congress. Thus, the common law claims against Honeywell SARL, which only allege conduct abroad, must be dismissed.

Plaintiffs have also brought common law unfair competition and unjust enrichment claims against Honeywell USA. As Plaintiffs have alleged that Honeywell USA acted in the United States, these claims cannot be dismissed on grounds of extraterritoriality. Honeywell USA contends that Plaintiffs' allegations fail to state a valid claim for relief.

Honeywell USA argues that the common law unfair competition claim must be dismissed because it is governed by the same standards as the Lanham Act. *See Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir. 1983). Honeywell USA has not sought dismissal of Plaintiffs' Lanham Act claim relating to website marketing, Count IV; this claim therefore remains outstanding. The Court therefore cannot dismiss the common law unfair competition claim on these grounds. Honeywell USA's motion must therefore be denied with respect to Count VII, common law unfair competition.

The Court next turns to the unjust enrichment claim. "In Michigan, a claim for

unjust enrichment consists of: '(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by the defendant.'" *Erickson's Flooring & Supply Co. v. Tembec, Inc.*, 212 F. App'x 558, 564 (6th Cir. 2007) (quoting *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993)).  Plaintiffs assert:

> Honeywell's unauthorized use in commerce of Plaintiffs' protected trade dress and Honeywell's sale of the Counterfeit Product has enabled Honeywell to earn substantial profits to which it is not in equity or good conscience entitled and has unjustly enriched Honeywell at Plaintiffs' expense, all to Honeywell's profit and to Plaintiffs' damage and harm.

TAC ¶ 155.  Plaintiffs have not alleged that Honeywell received a benefit *from Plaintiffs*; rather, they allege that Honeywell USA's unauthorized sales allowed it to unfairly profit in the marketplace.  Moreover, the Court has already concluded that the trade dress that is the subject of Plaintiffs' claims is not protected under the Lanham Act because it is functional.  Accordingly, the unjust enrichment claim against Honeywell USA must be dismissed.

## G. Injunctive Relief

Honeywell SARL and Honeywell USA have requested dismissal of Count IX, which seeks injunctive relief.  Honeywell SARL and Honeywell USA argue that this claim must be dismissed for the same reasons as the underlying Lanham Act and unfair competition claims.  The Court has determined, however, that Count IV, Plaintiffs' Lanham Act claim relating to website marketing, cannot be dismissed at this time.  Not all claims underlying the request for injunctive relief have been resolved.  Count IX therefore cannot be dismissed at this time.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Honeywell SARL's motion to dismiss is **GRANTED** with respect to the following claims: "Unfair Competition" (Count III); "Trade Dress Infringement" (Count V); "Common Law Unfair Competition" (Count VII); "Unjust Enrichment" (Count VIII); and the "orphan" misrepresentation allegations. The motion is **DENIED** with respect to the following claims: "Copyright Infringement" (Counts I and II); "Unfair Competition (Website Marketing)" (Count IV); and "Injunctive Relief" (Count IX).

**IT IS FURTHER ORDERED** that Honeywell USA's motion to dismiss is **GRANTED** with respect to the following claims: "Unfair Competition" (Count III); "Trade Dress Infringement" (Count V); "Unjust Enrichment" (Count VIII); and the "orphan" misrepresentation allegations. The motion is **DENIED** with respect to the following claims: "Common Law Unfair Competition" (Count VII); and "Injunctive Relief" (Count IX).

                                                  s/PATRICK J. DUGGAN
                                                  UNITED STATES DISTRICT JUDGE

Copies to:

Matthew B. Woodworth, Esq.
Jeffrey A. Sadowski, Esq.
Michael A. Lindsay, Esq.
Heather M. McCann, Esq.